653 So.2d 620 (1995)
CREE OIL COMPANY, Plaintiff-Appellee,
v.
The HOME INSURANCE COMPANY and J. Minos Simon, Defendants-Appellants.
No. 94-1219.
Court of Appeal of Louisiana, Third Circuit.
March 8, 1995.
Rehearing Denied May 15, 1995.
*621 Fred William Davis, Paul Joseph Hebert, for Cree Oil Co.
Marc W. Judice, for Home Ins. Co., & J. Minos Simon.
Before PETERS, AMY and SULLIVAN, JJ.
SULLIVAN, Judge.
This is a legal malpractice case. Plaintiff, Cree Oil Company (Cree), sued defendants, *622 J. Minos Simon and the Home Insurance Company (Simon's professional liability insurer), alleging that Simon's failure to timely file an appeal on behalf of Cree constituted malpractice. The alleged malpractice occurred in connection with a $101,362.56 money judgment rendered in favor of Claire Maraist Edmiston and against Hardy F. Edmiston, Jr. and Cree in the consolidated cases of Claire Maraist Edmiston v. Hardy F. Edmiston, Jr., docket number 85-1125, and Hardy F. Edmiston, Jr. v. Claire Maraist Edmiston, docket number 85-1119[1]. The judgment ensued from Maraist's action to enforce a prior community property settlement effectuated between her and her former husband, Edmiston. The trial court, in that proceeding, found that during the 19 month period between actual physical separation and the execution of the community property settlement, Edmiston breached his fiduciary duty owed to Maraist to operate and manage their community owned corporation, Cree, as a prudent administrator. The subject matter of that suit shall sometimes hereinafter be referred to as the "underlying case."
After the above judgment was rendered, Simon, who was not Edmiston's and Cree's trial counsel, enrolled as counsel for Edmiston and filed an appeal of the judgment on his behalf. He did not file an appeal on behalf of Cree. After the delays for taking an appeal ran, the judgment became final as to Cree, and it was forced to pay Maraist $129,300.27. This amount constituted satisfaction of the judgment plus accrued interest. Edmiston's appeal was subsequently dismissed by this court due to Cree's payment of the judgment.
Cree then filed the present action against Simon and Home Insurance. The trial court determined that Simon's omission of Cree as an appellant constituted malpractice which caused Cree to have to pay the aforementioned judgment without having the benefit of an appeal. The trial judge further concluded that, had Simon properly perfected the appeal on behalf of Cree, the corporation could have been successful in relieving itself of liability under the judgment. He awarded Cree $129,300.27 plus legal interest from the date of judicial demand until paid.
From this judgment, Simon and Home Insurance appeal, asserting that the trial court erred in the following particulars:
1) failing to find that plaintiff's claim is prescribed;
2) finding that Maraist or Clar-Mar, Incorporated (Clar-Mar) failed to allege or prove that Cree breached a duty owed to them;
3) holding by implication that Maraist and/or Clar-Mar could recover from Cree only if an active breach of duty by Cree was proven;
4) holding by implication that piercing the corporate veil may only be accomplished in a garnishment action by a successful litigant after judgment is had against the alleged alter-ego of the corporation;
5) holding that Cree would have prevailed on appeal of the underlying case;
6) placing the burden of proof on defendants; and
7) alternatively, failing to assess some degree of comparative fault to plaintiff.
After thoroughly reviewing the record on appeal, we conclude that the trial court erred in part by finding Simon liable to Cree for an amount ($6,362.56 plus accrued interest) which Cree, in the underlying case, admitted owing Maraist and Clar-Mar. Under these circumstances, the trial court erred in finding that this portion of the judgment in the underlying case could have been reversed on appeal. In all other respects, we affirm the judgment of the trial court.

THE UNDERLYING CASE
Simon was counsel for Edmiston early in this domestic proceeding. He enrolled as counsel for Edmiston on February 3, 1986, and withdrew as counsel of record on May 19, 1986. It appears from the record that the most significant action taken by Simon *623 during this period was to file a petition for divorce on behalf of Edmiston. Simon's conduct during this relatively brief period of representation is not questioned in this malpractice action. At issue are Simon's actions taken as appeal counsel.
Edmiston and Maraist were married in 1952. Thereafter, Edmiston worked as a petroleum landman. He generally acquired and sold oil and gas leases and put exploratory drilling deals together. On January 1, 1978, he incorporated Cree and continued the operations of his business under that name.
The parties physically separated on February 26, 1985. Thereafter, Maraist filed a petition for separation (docket number 85-1125), and Edmiston did the same (docket number 85-1119). These separate suits were consolidated by the trial court. On March 11, 1985, the parties entered into a stipulation in open court whereby the court ordered Edmiston to continue operating the community corporation, Cree, "... as a prudent, reasonable businessman, and any deviation from that standard will be handled by the court." Additionally, an Edmiston community escrow account was established into which one-half of all incoming funds of Cree were to be deposited. The other half of the income would go to Cree for its business operations. Edmiston was allowed a $10,000.00 per month salary from Cree. On March 25, 1985, the parties stipulated to the payment of $4,000.00 per month in alimony pendente lite to Maraist.
On March 3, 1986, Edmiston filed a petition for divorce. Three days later, the trial court granted a judgment of separation in favor of Edmiston, finding Maraist to be at fault in causing the separation. By judgment rendered April 21, 1986, the parties were divorced.
On September 3, 1986, the parties executed an act of community property partition which, among other things, divided equally the former community's ownership of Cree's mineral interests. On March 20, 1987, the trial court rendered a consent judgment which incorporated by reference this partition agreement. To effectuate the division of assets, Maraist's one-half interest in Cree was transferred to Clar-Mar, a corporation wholly owned by Maraist. The effective date of the transaction was September 30, 1986, and the assets transferred were valued as of that date. Cree agreed to properly account to Clar-Mar for income received after September 30, 1986. In return for its management services during the period from October 1, 1986 through February 28, 1987, Cree received a $3,000.00 per month management fee. Additionally, the parties agreed to "acquit and hold harmless" each other for reimbursement claims of "... office and administrative expenses (including salary) incurred from and after October 1, 1986." Cree also agreed to account to Clar-Mar for any revenues received after the effective date of the consent judgment.
On September 20, 1988, Maraist and Clar-Mar filed a petition to enforce the community property settlement. They named Edmiston, Edmiston Oil Company and Cree as defendants. Therein, plaintiffs alleged that Cree and/or Edmiston failed to account to them for a $15,643.96 check received from Enstar Petroleum Company on October 9, 1987. Additionally, plaintiffs alleged that they were entitled to one-half of the salary paid by Cree to Edmiston because of his failure to "... perform any services to justify this salary, and ... his failure to act as a prudent officer and director of Cree ... and as a prudent businessman in the operation of the community estate" from February, 1985 through September, 1986.
This matter was tried on October 5, 1989. Edmiston acknowledged in testimony that, pursuant to the March 12, 1985 stipulation, he was required to conduct the business of Cree in good faith and as a prudent administrator. He explained that most of Cree's lease holdings were in the Gueydan area of Vermilion Parish. All of the leases Cree was involved in were executed in conjunction with geologist Marvin Munchrath and his company, Miocene Oil. According to Edmiston, he operated Cree in the same fashion during the separation period as he had done prior thereto and afterwards. Between February, 1985 and September, 1986, he acquired 10 leases on behalf of Cree. However, only one of these leases was executed with Munchrath's participation because of Munchrath's *624 reluctance to invest in properties involved in this domestic litigation. Between February, 1985 and March, 1987, 27 leases owned by Cree before the separation period lapsed. Edmiston explained that this lack of activity was due to the depressed oil industry at the time and Munchrath's reluctance to do any geology work on these leases. However, between March, 1987 and June, 1989 (after the consent judgment partitioning the community), Cree acquired 36 new leases, including the 27 that had lapsed during the separation period. Edmiston explained that in March, 1987, he "changed (his) method of operation" of Cree and began participating again in some leases. He testified that the relative inactivity during the separation period was due to his resolve to be careful because his actions were subject to court supervision. He felt that it was more responsible of him to take a low risk approach rather than placing a great deal of community assets in jeopardy. He also noted that during the separation period Cree drilled three wells in four separate lease areas when, according to Maraist and Clar-Mar, he was "supposedly not doing a dern thing." Edmiston concluded his testimony on this issue by emphatically stating that he earned every penny of his $10,000.00 per month salary during the separation period.
On the failure to account issue, Edmiston stated that he received the $15,643.96 Enstar Petroleum check in October, 1987. He wrote a check on Cree's account to his wife for $6,362.56, representing her one-half share of the Enstar check ($7,821.98) less the amount owed by Claire Maraist to him ($648.64) and Cree ($810.78) pursuant to a quarterly accounting of community expenses. However, he did not sign the check and it was never cashed by Maraist and Clar-Mar.
Steve Skarda, Edmiston's Certified Public Accountant, corroborated his testimony concerning the check owed to Maraist and Clar-Mar. He stated that the $1,459.42 total deduction from the Enstar proceeds were taken pursuant to his December 10, 1987 letter which he summarized the amounts owed by Maraist for payment of the debts of the former community.
On October 12, 1989, the trial court in this underlying case rendered written reasons for judgment. Therein, the trial judge concluded that Edmiston "... was imprudent in his management of the community assets in Creed (sic) Oil Company during the period commencing February 20, 1985 until March 20, 1987" and that he "stopped doing business during the period of separation." The court ordered the return to plaintiffs of one-half of his $190,000.00 salary and, additionally, ordered that "Mr. Edmiston shall pay unto Mrs. Edmiston the sum of $6,362.56," representing the amount owed as a result of the Enstar Petroleum transaction.
The trial court signed judgment in this matter on April 9, 1990. In pertinent part, the judgment provided:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of CLAIRE MARAIST EDMISTON and CLAR-MAR, INC., plaintiffs, and against HARDY F. EDMISTON, JR., and CREE OIL COMPANY, defendants, in the sum of NINETY-FIVE THOUSAND AND NO/100 ($95,000.00) DOLLARS representing one-half (½) of the salary paid by Cree Oil Company to Hardy F. Edmiston, Jr., during the 19-month period that Hardy F. Edmiston, Jr., was paid the sum of $10,000.00 per month as salary by Cree Oil Company;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Court finds that there should be no offset for any contribution of Cree Oil Company to the corporate retirement plan disbursed to Claire Maraist Edmiston during the 19-month period;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of CLAIRE MARAIST EDMISTON and CLAR-MAR, INC., plaintiffs, and against HARDY F. EDMISTON, JR., and CREE OIL COMPANY, defendants, in the sum of SIX THOUSAND THREE HUNDRED SIXTY-TWO AND 56/100 ($6,362.56) DOLLARS representing one-half (½) of $15,643.96, subject to the deductions for legal expenses incurred by Cree Oil Company as stipulated by the parties; (Emphasis ours.)
*625 As mentioned, Simon did not participate in the trial of this matter insofar as the petition to enforce the community property settlement was concerned. Edmiston's counsel for trial was Larry Hebert. After the judgment was rendered in the underlying case, Edmiston discussed the matter with Simon at Red Lerille's, a Lafayette health club. Edmiston asked Simon to look into the matter to determine if an appeal of the judgment was warranted. Simon reviewed the file and notified Edmiston that the judgment stood a good chance of reversal on appeal. On May 25, 1990, Simon enrolled as counsel for Edmiston only, and on the same date, filed a motion for suspensive appeal on behalf of Edmiston. No appeal was filed on behalf of Cree.
On November 11, 1993, Simon filed an appellate brief with this court on behalf of Cree and Edmiston. Because the brief was filed after the date it was due, he thereby waived oral argument. On November 14, 1990, one of Maraist's attorneys, Homer Ed Barousse, Jr., sent a letter to Simon notifying him of their position that, since Cree did not file an appeal, the aforementioned judgment was final as to Cree. On January 21, 1991, Barousse sent another letter to Simon demanding payment of the judgment by Cree. On February 11, 1991, Cree paid $129,300.27 to Maraist and Clar-Mar in satisfaction of the judgment amount, $101,362.56, and the accrued interest thereon.
Maraist and Clar-Mar then moved in this court to dismiss Edmiston's appeal on the grounds that the judgment appealed from had been paid. In an unpublished opinion, bearing docket number 90-1007 consolidated with docket number 90-1008, we granted the motion to dismiss on March 11, 1992.

THIS MALPRACTICE ACTION
Cree filed this suit against Simon and Home Insurance on September 25, 1991. Therein, Cree alleged that it retained Simon to appeal the aforementioned judgment and that, due to his errors and omissions, Cree had to pay the judgment and lost its appeal rights. Cree prayed for judgment against Simon and Home Insurance in the amount of $129,300.27 plus legal interest from date of judicial demand.
Deposition Testimony
Simon's deposition was not admitted into evidence at trial. Cree attempted to admit it into evidence, but defendants objected, alleging the deposition had not been taken for trial purposes. The trial court sustained the objection, and Cree then proffered the deposition. Despite this, the entire deposition appears in the appellate record at R.pp. 101-159. Our review of the stipulation appearing at R.p. 105 reveals that Simon's deposition was "... taken upon oral examination, for all purposes...." Pursuant to La.C.C.P. art. 1450(A)(2), the deposition of a party may be used at trial by an adverse party for any purpose. The record of the trial in this matter indicates that Simon, a party, was not present at trial. Therefore, subject to the rules of evidence, his deposition was properly admissible at trial in lieu of his live testimony pursuant to Article 1450(A)(2). While the issue of the deposition's admissibility is not before us because Cree, which was successful at trial, had no practical reason to raise this issue on appeal, we consider our summary of the substance of Simon's deposition to be proper in this case because (1) the entire deposition is in the record and (2) it was otherwise admissible at trial.
Simon was deposed on April 15, 1992. He stated that when Edmiston first approached him at Red Lerille's, he told Edmiston that he would look into the matter upon Edmiston's informing his trial lawyer, Larry Hebert, of the proposed consultation. After Simon and his then-associate, Miles Tilly, reviewed the file, they determined that a plausible basis existed for an appeal. Simon further explained that he could not recall whether he was retained by Cree. He knew at the time of the initial consultation that Edmiston owned Cree. He thought that he was retained by Edmiston personally to appeal for him, but he did not recall at the time being aware that Cree was cast in judgment solidarily with Edmiston. He also did not recall Edmiston specifically instructing him to appeal on behalf of Cree. When he filed the notice of appeal on behalf of Edmiston, copies thereof were sent to Maraist's attorneys, *626 Barousse and Kenneth Privat, and Edmiston's former attorney, Larry Hebert.
Simon assigned Tilly the duty of drafting the appellate brief. Simon stated that sometime in September of 1990, Tilly pointed out to him that the judgment was rendered against Cree and Edmiston. Tilly inquired as to whether, in the appellate brief, he should argue on behalf of Cree as well as Edmiston. According to Simon, he responded in the affirmative because, in his view, the only distinction between Cree and Edmiston, Cree's 100% shareholder, was the corporate status of Cree.
In late October and early November of 1990, Simon underwent prostate cancer surgery in Houston. He explained that his memory lapses insofar as this case is concerned are a secondary result of having undergone this procedure. When he returned from Houston, he reviewed and signed the brief on November 7, 1990. It was filed with this court on November 11, 1990. In the brief, Simon alleged two assignments of error, to-wit:
1) the trial court's conclusion that plaintiffs proved that defendants breached a fiduciary duty owed to plaintiffs and that plaintiffs sustained damages; and
2) the trial court's refusal to allow defendants an offset for the amounts owed Maraist and Clar-Mar for amounts received by Maraist, out of Edmiston's salary, in the partition of his pension fund.
When Simon became aware via Barousse's November 14, 1990 letter of Maraist's position that, because of Cree's failure to appeal, the judgment was final as to Cree, he attempted to forestall Maraist's collection on the judgment until after Edmiston's appeal was decided by this court. Maraist declined this offer and insisted that Cree pay the judgment. Soon thereafter, Simon informed Edmiston of the situation. Simon testified that he told Edmiston that if the omission of Cree as appellant constituted malpractice, "... he just screwed up." He also explained to Edmiston that he had professional liability insurance coverage and that he would understand if Edmiston filed a malpractice claim.
Barousse was deposed on August 24, 1992. He represented Maraist as co-counsel with Privat. He stated that he did not recall the precise date upon which he realized that Edmiston was the sole appellant. When he did though, he immediately consulted with Privat about the possibility of collection on the judgment from Cree. Upon receipt of Simon's appellate brief filed on behalf of Edmiston and Cree, he assumed that Simon represented both Edmiston and Cree due to the representations made by Simon in the brief. He sent the November 14, 1990 letter to Simon informing him of his client's position. When Simon telephoned Barousse in response to the letter, Simon did not assert that he did not represent Cree or that on appeal, Larry Hebert continued to represent Cree.
In January 1991, Barousse prepared but did not file garnishment petitions directed to Premier Bank and Enstar Petroleum. He informed Simon, by letter dated January 21, 1991, that if Cree did not pay, he would file the garnishments to effectuate collection of the judgment from Cree. On February 14, 1991, Edmiston signed a check on Cree's account for $129,300.27 and sent it to Maraist.
Privat was also deposed on August 24, 1992. He generally corroborated Barousse's testimony.

Prescription Exception
On July 20, 1992, Simon and Home Insurance filed a peremptory exception of prescription. Therein they argued that, because the alleged omission occurred in May of 1990 and suit was not filed until September 25, 1991, the suit was untimely because Cree knew or reasonably should have known of the alleged omission and resultant damages more than one year prior to the filing of suit.
The trial court conducted a hearing on the exception on January 25, 1993 and rendered judgment denying the exception on February 24, 1993. Defendants then applied to this court for a supervisory writ of review seeking reversal of the trial court's ruling. On April 28, 1993, this court denied defendants' writ application in case number W93-272. Defendants then took their cause to the Supreme Court of Louisiana. On September *627 17, 1993, that court denied defendants' writ application.
Trial Proceedings
This malpractice matter was tried on April 12, 1994. Several exhibits were entered into evidence, including the entire record of the underlying case. Also, Simon's appellate brief in that matter was also put into evidence.
At trial, Edmiston testified that he agreed to pay Simon $200.00 per hour to handle the appeal. He instructed his trial attorney, Larry Hebert, to cooperate fully with Simon concerning transfer of the file and the giving of trial information. According to Edmiston, he did not want to pay two attorneys to handle the appeal because he had already been "eaten up by legal fees." When Simon informed him that he had a "better than 50/50 chance of winning" on appeal, Edmiston agreed to allow Simon to represent him.
Edmiston and Munchrath appeared at Simon's office on May 24, 1990 to sign a personal surety appeal bond. Prior to this, Edmiston had never been involved in the appeal of a lawsuit. He knew nothing about appeal bonds or suspensive appeals on that date. He admittedly did not read the bond or the affidavit and followed Simon's instructions to just sign the papers. At this meeting, Simon once again reiterated to those present that there was a greater than 50/50 chance of success on appeal.
Edmiston stated that, in the latter part of 1990, Simon telephoned him and appeared to be disturbed and upset. According to Edmiston, Simon asked him to come to his office as soon as possible. Edmiston explained that when he arrived, Simon admitted that he left Cree off the appeal and stated that this was the first time in 44 years of practicing law that he had failed to correctly file a pleading. Simon informed him further that he was working to delay the collection of the judgment from Cree. Simon also informed Edmiston of his malpractice insurance coverage and, according to Edmiston, stated that he would not have any problems collecting on his coverage.
Larry Hebert also testified at trial. According to Hebert, when he received the judgment in the underlying case, he became upset because the judgment, insofar as it held Cree and Edmiston solidarily liable, did not conform to the trial judge's reasons or his requests as to the form thereof. Simon quickly became involved in the case, and Edmiston instructed him to cease working on the case and cooperate with Simon. Although Hebert filed no motion to withdraw as counsel of record, he considered himself as no longer the attorney for Edmiston and Cree due to the dismissal by these clients. Thereafter, he conferred with Simon on the case and informed him that, if he had been retained as appellate counsel, he would reurge the previously filed (and denied) exception of no cause of action on behalf of Cree. Hebert testified that he told Simon that the trial judge's written reasons supported this position.
Hebert also acknowledged receiving a courtesy copy of the appeal bond and motion for appeal from Simon. However, he did not review the documents but instead, just read the cover letter. After learning that the appeal was not perfected as to Cree, he attended a meeting with Simon and Edmiston at Simon's office. According to Hebert, Simon admitted his error and expressed his sorrow to Edmiston. However, Simon also told Edmiston not to worry because he had malpractice insurance.
Soon thereafter, Hebert took over the representation of Cree and Edmiston in the appeal. He then received notice from this court that he had lost the right to orally argue the appeal because Simon had filed his brief after the filing deadline and thereby waived oral argument. After Cree paid the judgment, Maraist and Clar-Mar filed a motion in this court to dismiss Edmiston's appeal. Hebert appeared in front of this court on the hearing date and, in response to questioning from the panel, acknowledged that the judgment had been paid. He was informed that, because of the payment in full and cancellation of the judgment, the appeal would be dismissed.
Tilly also testified at trial. He understood from speaking with Simon that the appellate brief was to be filed on behalf of Edmiston and Cree. During the time in which he *628 prepared the brief, Simon was in the office regularly and knew the status of their arguments and the brief. In consultation with Simon after doing legal research, they decided not to pursue the argument that Cree, being distinct from Edmiston, should not have been held liable in the judgment based upon Cree's corporate separateness. This decision was made, according to Tilly, because he and Simon concluded that Edmiston was the alter ego of Cree. They believed that this fact would have precluded reversal in favor of Cree on appeal. He vaguely recalled considering the possibility of pursuing the peremptory exceptions of no right and no cause of action. However, he decided after researching the issue that such an approach would not be palatable on appeal. He and Simon chose to argue primarily that Maraist and Clar-Mar failed to prove a breach of fiduciary duty on behalf of Edmiston because they felt that it was the strongest appealable issue.
When he read the letter from Barousse which asserted that the judgment was final as to Cree, Tilly immediately checked the file and determined that the appeal had only been taken on behalf of Edmiston. He then informed Simon, who became visibly angry and admitted his error in expletive-laced phrases.
After hearing these three witnesses, the trial judge took the case under advisement. On April 16, 1994, he rendered written reasons for judgment in which he concluded that, contrary to the position of Simon and Home Insurance, Cree would have succeeded on appeal. The trial court reasoned that Cree Oil did not owe a duty or breach a duty owed to Maraist and Clar-Mar. Furthermore, he determined that Cree presented a prima facie case of malpractice and that defendants failed to present sufficient countervailing proof to overcome the inference that Simon's negligence caused Cree's damages. Additionally, the trial court specifically concluded that Edmiston's failure to read the appeal bond and affidavit did not constitute negligence which contributed to Cree's damages. Also, he determined that Hebert had no obligation to his former clients, Cree and Edmiston, to read a courtesy copy of the appeal motion sent to him from Simon. In conclusion, the trial court held that Simon breached a duty owed to Cree which caused Cree to have to pay a debt which it otherwise would not have had to pay.
The trial court signed judgment in accordance with these reasons on May 4, 1994. This appeal ensued.

OPINION
Defendants' seven assignments of error raise four issues for purposes of our analysis in this opinion. These areas of discussion which follow are:
I. Prescription
II. Simon's Liability for the Salary Reimbursement Claim
III. Simon's Liability for One-Half of the Enstar Petroleum Payment Claim
IV. Comparative Fault of Cree

I. Prescription

Defendants contend that the trial court erred in denying their exception of prescription. They argue that Cree knew or should reasonably have known (through Edmiston) of Simon's omission as early as May 24, 1990 (the date upon which Edmiston signed the appeal bond) and as late as sometime in June of 1990. As such, the argument continues, this suit filed on September 25, 1990 was time barred by the one year prescriptive period. For the following reasons, defendants' claim is without merit.
This issue was addressed in the above-mentioned writ applications to this court and the Supreme Court of Louisiana, both of which determined that the trial court did not err in denying defendants' exception of prescription. Nothing indicates to us now that the prior rulings of this court and of the Supreme Court of Louisiana on this issue were erroneous. In this regard, the denial of the exception is the "law of the case" on this issue. In Dodson v. Community Blood Center of Louisiana, Inc., 633 So.2d 252, 255 (La.App. 1 Cir.1993), writs denied, 93-3158 (La. 3/18/94), 634 So.2d 850 and 93-3174 (La. 3/18/94), 634 So.2d 851, the First Circuit clearly and succinctly explained this doctrine as follows:

*629 The "law of the case" doctrine applies to all prior rulings or decisions of an appellate court or the supreme court in the same case, not merely those arising from the full appeal process. See Brumfield v. Dyson, 418 So.2d 21 (La.App. 1st Cir.), writ denied, 422 So.2d 162 (La.1982). This policy applies to parties who were parties to the case when the former decision was rendered and who thus had their day in court. The reasons for the "law of the case" doctrine is to avoid relitigation of the same issue; to promote consistency of result in the same litigation; and to promote efficiency and fairness to both parties by affording a single opportunity for the argument and decision of the matter at issue. Day v. Campbell-Grosjean Roofing and Sheet Metal Corp., 260 La. 325, 256 So.2d 105 (1971). This doctrine is not an inflexible law, thus appellate courts are not absolutely bound thereby and may exercise discretion in application of the doctrine. It should not be applied where it would accomplish an obvious injustice or where the former appellate decision was manifestly erroneous. Brumfield v. Dyson, 418 So.2d at 22.
Since the merits of defendants' assignment of error were previously disposed of by way of Third Circuit and Louisiana Supreme Court supervisory writ application denials and we find no "manifest error" in result or "obvious injustice" in our pretermission of the assigned error, we decline to address the merits of this assignment of error.

II. Simon's Liability for the Salary Reimbursement Claim

Simon and Home Insurance assert that the trial court erred in holding that his failure to file the appeal for Cree resulted in damages to Cree for which they are liable. Cree, on the other hand, contends that the trial court's holding is not manifestly erroneous.
The burden of proof in a legal malpractice case was established in Jenkins v. St. Paul Fire and Marine Insurance Co., 422 So.2d 1109 (La.1982). Therein, the court stated that:
[O]nce the client has proved that his former attorney accepted employment and failed to assert the claim timely, then the client has established a prima facie case that the attorney's negligence caused him some loss, since it is unlikely the attorney would have agreed to handle a claim completely devoid of merit. In such a situation, a rule which requires the client to prove the amount of damages by trying the "case within a case" simply imposes too great a standard of certainty of proof. Rather, the more logical approach is to impose on the negligent attorney, at this point in the trial, the burden of going forward with evidence to overcome the client's prima facie case by proving that the client could not have succeeded on the original claim....
Accordingly, when the plaintiff (as in this case) proves that negligence on the part of his former attorney has caused the loss of the opportunity to assert a claim and thus establishes the inference of causation of damages resulting from the lost opportunity for recovery, an appellate court (viewing the evidence on the merits of the original claim in the light most favorable to the prevailing party in the trial court) must determine whether the negligent attorney met his burden of producing sufficient proof to overcome plaintiff's prima facie case.
Id, at 1110.
In this case, Cree sufficiently proved that Simon, its former attorney, accepted employment and failed to timely appeal the judgment on behalf of Cree. The burden then shifted to the defendants to prove that the client, Cree, could not have succeeded on appeal. The trial court, in written reasons, concluded that defendants' position that Cree would not have prevailed on appeal was "unjustified." He further concluded that defendants "did not provide sufficient proof to overcome the inference that (Simon's) negligence caused the plaintiff's damage."
The factual determinations which form the basis of the trial court's conclusion that defendants failed to meet their burden of proof are subject to the manifest error/clearly wrong standard of review. Fawer, Brian, Hardy & Zatzkis v. Howes, 93-2076 (La.App. 4 Cir., 6/15/94), 639 So.2d 329 *630 and Abshire v. National Union Fire Insurance Co., on rehearing, 91-929 (La.App. 3 Cir., 3/23/94), 636 So.2d 238, writ granted, 94-1025 (La. 6/24/94), 640 So.2d 1320. For a complete discussion of the standard of appellate review, see Stobart v. State, DOTD, 617 So.2d 880 (La.1993).
After a thorough review of the records in this malpractice action and the underlying case, we conclude that the trial court did not manifestly err in finding that defendants failed to meet their burden of proof. The judgment in the underlying case held Cree solidarily liable with Edmiston for reimbursement of one-half of the salary paid Edmiston by Cree. The corporation could have succeeded on appeal by arguing that, solely within the context of this reimbursement claim, it owed no duty and, therefore, had not breached a duty owed to Maraist and Clar-Mar. Pursuant to the allegations of their petition, Maraist and Clar-Mar sought recovery from Edmiston for his breach of fiduciary duty owed to Maraist, i.e., his failure to earn his salary as president of Cree. Maraist and Clar-Mar alleged that this breach reduced the aggregate value of the community property. This duty is imposed upon separated spouses when they remain in control of community owned assets such as business enterprises. Queenan v. Queenan, 492 So.2d 902 (La.App. 3 Cir.), writ denied, 496 So.2d 1045 (La.1986).
In the underlying case, the trial court, in written reasons, determined that Edmiston was imprudent in the management of Cree. However, the trial court rendered judgment against Edmiston and Cree, in solido, without finding that Cree had breached a duty owed to Maraist and Clar-Mar or that Cree had been likewise imprudent. Under these circumstances, we conclude that Cree could have absolved itself of liability on appeal by arguing that, although it was owned 100% by the party (Edmiston) found to have breached a duty to the plaintiffs, Cree was a separate juridical entity. Therefore, the judgment holding Cree solidarily liable with Edmiston for Edmiston's breach of fiduciary duty could have been reversed on this basis.
In conclusion, we find no manifest error in the trial court's determination that Simon and Home Insurance failed to prove that Cree's claim could not have succeeded on appeal. Defendants did not present sufficient proof to overcome Cree's prima facie case of malpractice.

III. Simon's Liability for One-Half of the Enstar Petroleum Payment Claim

Simon and Home Insurance assert that the trial court erred in holding them liable for the $6,362.56 plus accrued interest owed by Cree to Maraist and Clar-Mar. This amount constituted their share of the $15,643.96 payment (less expenses) made by Enstar Petroleum to Cree. Defendants argue that, at the trial of the underlying case, Cree admitted owing at least this amount to Maraist and Clar-Mar as a result of the Enstar Petroleum payment. In other words, defendants contend that the disputed issue at trial of the underlying case was whether Cree owed $6,362.56 or one-half ($7,821.98) of the $15,643.46 payment. The dispute, according to Simon and Home Insurance, centered on whether it was proper at the time for Cree to deduct $1,459.42 from Maraist's and Clar-Mar's one-half share for amounts owed by Maraist to Cree and Edmiston.
The legal principles applicable to this assigned error are those discussed in the prior section of this opinion. Applying these precepts, we conclude that the trial court erred in holding Simon and Home Insurance liable in malpractice for an amount which Cree admitted owing to Maraist and Clar-Mar in the underlying case. Defendants sufficiently proved in this malpractice case that Cree could not have succeeded in avoiding liability on this issue on appeal. Stated another way, we discern of no method which Cree could have employed, on appeal of the underlying case, to reverse this portion of the judgment which, at trial, it admitted owing. Edmiston admitted receiving the October 9, 1987 check from Enstar Petroleum, deducting the $1,459.42 owed by Maraist, and writing a $6,362.56 check to Maraist and Clar-Mar dated December 22, 1987. However, Edmiston forgot to sign the check before mailing it and it was never cashed.
In our opinion, Edmiston's testimony amounts to a judicial confession that, at the *631 very least, $6,362.56 was owed by Cree to Maraist and Clar-Mar. In this regard, Cree acquiesced in the judgment insofar as it was held liable to Maraist and Clar-Mar for this amount plus accrued interest. See La.C.C. art. 1853 and La.C.C.P. art. 2085. Given this set of circumstances, Cree could not have succeeded on appeal of this amount. The trial court, therefore, erred in this malpractice case by holding Simon and Home Insurance liable for this amount which Cree could not have avoided on appeal.

IV. Comparative Fault

Simon and Home Insurance assert that the trial court erred in failing to assess Cree some degree of comparative fault. Defendants' comparative fault claim is based upon Edmiston's and Hebert's failure to read the appeal bond and affidavit. The trial court concluded that Edmiston was not negligent in relying upon his "$200 per hour" attorney's advice that he sign the appeal bond and affidavit. Additionally, the trial court found that Hebert owed no duty to read a courtesy copy of the documents in a matter in which he was no longer representing Cree and Edmiston.
It is well settled that the trier of fact is vested with great discretion in the assessment of fault. Rollins v. Evangeline Parish Police Jury, 93-1293 (La.App. 3 Cir. 5/4/94), 640 So.2d 432, writ denied, 94-1446 (La. 9/23/94), 642 So.2d 1291. The trial judge's conclusions, that Edmiston and Hebert were not negligent in failing to read the documents, are reasonable under the particular facts of this case. Therefore, we find no error on the part of the trial court in this regard.

CONCLUSION
For the above reasons, we reverse the judgment only to the extent that the trial court held Simon and Home Insurance liable to Cree for the $6,362.56 plus legal interest claim related to the Enstar Petroleum Company. In all other respects, the judgment rendered in favor of Cree Oil Company and against J. Minos Simon and the Home Insurance Company is affirmed.
All costs of this appeal are to be paid by defendants, J. Minos Simon and the Home Insurance Company.

REVERSED IN PART; AFFIRMED IN PART; AND RENDERED.
AMY, J., concurs in result.
NOTES
[1] Hereafter, we shall refer to Claire Maraist Edmiston as "Maraist" and Hardy F. Edmiston, Jr. as "Edmiston."