**TROY HENRY**  \*  NO. 2021-CA-0438

**VERSUS**  \*

\*  **COURT OF APPEAL**

**JANET M. AHERN & JANET**  \*
**M. AHERN, PLC**  **FOURTH CIRCUIT**

\*  **STATE OF LOUISIANA**

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2020-00676, DIVISION "D"
Honorable Nakisha Ervin-Knott, Judge

\* \* \* \* \* \*

**Judge Paula A. Brown**

\* \* \* \* \* \*

(Court composed of Judge Edwin A. Lombard, Judge Roland L. Belsome, Judge
Paula A. Brown)

Jacques F. Bezou
Jacques F. Bezou, Jr.
THE BEZOU LAW FIRM
534 E. Boston Street
Covington, LA 70433

    COUNSEL FOR PLAINTIFF/APPELLANT

Christopher H. Irwin
Gustave A. Fritchie, III
IRWIN FRITCHIE URQUHART & MOORE LLC
400 Poydras Street
Suite 2700
New Orleans, LA 70130

    COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED**
**FEBRUARY 9, 2022**

PAB
EAL
RLB

This case arises out of a claim for legal malpractice. Appellant, Troy Henry ("Mr. Henry"), appeals the district court's judgment, which granted summary judgment in favor of the Appellees, Janet M. Ahern ("Ms. Ahern") and Janet M. Ahern, PLC (collectively referred to as "Defendants"), and dismissed his claims against Defendants, with prejudice. For the reasons that follow, we affirm the district court's judgment.

## FACTUAL AND PROCEDURAL HISTORY

This case has been before this Court on multiple occasions. In February of 2011, Mr. Henry retained Ms. Ahern to represent him in a divorce proceeding from his former wife, Marcia Henry ("Ms. Henry"). The underlying dispute herein arises from Ms. Ahern's representation of Mr. Henry in a community property partition proceeding between the former spouses (collectively "the Henrys"). As set forth in *Henry v. Henry*, 17-0282 (La. App. 4 Cir. 10/18/17), 316 So.3d 876 ("*Henry I*"), during the community property regime, the Henrys acquired a corporation, Henry Consulting, LLC ("Henry Consulting"). The issue in the partition proceeding was whether the community-owned corporation of Henry Consulting was responsible for the debts of its subsidiary, Sterling Fresh Foods,

1

LLC ("Sterling"), a company exclusively owned by Mr. Henry, without an express assumption or guaranty. If so, the debts would be community obligations. The Henrys agreed to use Chaffe & Associates, Inc. ("Chaffe"), to determine the valuation of Henry Consulting. Chaffe performed the valuation in 2013 and valued Henry Consulting at $205,744. This valuation was based on the assumption that Henry Consulting was the corporate guarantor of Sterling's debts in the amount of $737,340 because Mr. Henry had personally guaranteed those debts.

The district court appointed a special master to conduct a trial on the valuation of the Henrys' interest in Henry Consulting.[1] During trial, Chaffe's expert, Vanessa Claiborne ("Ms. Claiborne"), testified that the Henry Consulting valuation, which included Sterling's debts, was a conditional evaluation, applicable only if the district court determined that Henry Consulting was a corporate guarantor of Sterling's debts under the law. Ms. Claiborne calculated the valuation numbers both with and without Sterling's debts. The special master issued a report that recommended Sterling's debts be excluded from the valuation of Henry Consulting; thus, as the debts were not community obligations, the special master found the value of Henry Consulting was $943,084. The district court adopted the recommendation in its entirety, and an appeal by Mr. Henry followed.

On appeal, this Court affirmed in part, reversed in part, and remanded, reversing the portion of the district court's judgment that adopted the special master's valuation of Henry Consulting, instead of the court appointed expert's valuation. *See Id.*, 17-0282, pp. 7-8, 316 So.3d at 881. Thus, this Court deemed it necessary for the district court, before rejecting the court appointed expert's

---

[1] The trial on the valuation of Henry Consulting was held on March 16 and 17, 2016.

opinion, to evaluate the credibility of the expert or determine that the expert's opinion was unreasonable or unfounded.

On remand, the district court issued an amended judgment, decreeing:

> **IT IS ORDERED, ADJUDGED, AND DECREED** that the Special Master's Opinion, which excluded the debts of Sterling [Fresh] Foods from the valuation of Henry Consulting, LLC is adopted in its entirety, pursuant to La. R.S. 13:4165(C)(3). In support of this determination, the Court finds that the valuation of Chaffe & Associates, insofar as it included the debts of Sterling [Fresh] Foods in its valuation, is unreasonable and not well-founded in accordance with the law.

*Henry v. Henry*, 18-0522, p. 3 (La. App. 4 Cir. 12/19/18), 318 So.3d 794, 796. ("*Henry II*").

In *Henry II*, Mr. Henry appealed the district court's amended judgment and argued that Sterling's debts were community obligations. The *Henry II* Court, in affirming the district court's judgment, concluded:

> [T]he trial court did not err in adopting the special master's recommendation . . . the special master did not entirely reject the court-appointed expert's opinion; rather, he adjusted it. The special master did so to resolve a legal issue the court-appointed expert acknowledged that she was not qualified to decide. . . . The court-appointed expert's opinion was conditioned upon the existence of a corporate guarantee (sic). The lack of any evidence that Henry Consulting agreed to guarantee the debts of its 50% owned subsidiary, Sterling, precludes attributing the Sterling debts to Henry Consulting.

*Id*., 18-0522, p. 9, 318 So.3d at 799.

On December 19, 2018, the Clerk of Court mailed the notice of the Fourth Circuit Court of Appeal's opinion. On January 22, 2019, Ms. Ahern filed an application for supervisory writs with the Louisiana Supreme Court. The Supreme Court refused to consider the writ application, writing, "Not Considered, not timely filed. *See* La. S.Ct. Rule X, § 5(a)." *Henry v. Henry*, 19-0134 (La. 3/18/19), 267 So. 3d 88. On March 21, 2019, Ms. Ahern filed a motion for reconsideration with

3

the Louisiana Supreme Court, which was likewise denied. *Henry v. Henry*, *reconsideration denied*, 19-0134 (La. 5/20/19), 271 So. 3d 198.

On January 23, 2020, Mr. Henry filed a petition for damages against Defendants, alleging that while representing him in a divorce proceeding, Ms. Ahern committed legal malpractice by failing to file a writ application with the Louisiana Supreme Court within 30 (thirty) days of the mailing of the notice of the original opinion of this Court. Mr. Henry contends that he suffered and continues to suffer damages, as a result of Defendants' negligence. Defendants filed an answer to the petition and denied the allegations.

*Motion for Summary Judgment I*

Mr. Henry filed a motion for summary judgment on November 24, 2020, and argued that there were no genuine issues of material fact as to Defendants' liability for legal malpractice for failing to timely file his writ with the Supreme Court and his resulting damages. Mr. Henry contended that because of Defendants' negligence, he lost an opportunity for the Supreme Court to review his case, grant his writ application, reverse the lower courts, and find that the Sterling debts should be deducted from the total value of Henry Consulting. Mr. Henry claimed that he was left with this Court's decision in *Henry II* – that the debts of Sterling were excluded from the valuation of Henry Consulting – resulting in the overvaluation of Henry Consulting by $737,340, and a "windfall" in the amount of $368,670, to his former spouse. Mr. Henry maintained that Defendants' legal malpractice caused him to not receive the full value of his one-half interest in community assets.

Defendants opposed the motion for summary judgment and argued that not only did the lower courts rule correctly in the underlying case, but Mr. Henry could

not prove that the untimely filed writ application caused any recoverable loss. In support, Defendants offered as evidence the affidavit of Martin A. Stern ("Mr. Stern"), an expert in the area of Louisiana Appellate Practice.[2] Mr. Stern attested to the Louisiana Supreme Court's role and approach to granting certiorari. Mr. Stern stated that while there is no right of appeal to the Supreme Court, the Supreme Court does exercise appellate jurisdiction over a very limited number of matters, such as judgments that order the death penalty, judgments that render a statute unconstitutional, and judgments that involve disciplinary enforcement against lawyers and judges. Otherwise, according to Mr. Stern, the Supreme Court "exercises complete discretion in deciding whether to grant a writ review." Mr. Stern further opined that the Supreme Court "does not see its role as one correcting errors in the courts below. The Supreme Court leaves it to the intermediate appellate courts to correct errors." Rather, Mr. Stern attested, the Supreme Court "sees its role as resolving unsettled questions of law as determined by the Court to be in the interest of the legal system."

Quoting from the Supreme Court's decision in *Boudreaux* v. *State, Dept. of Transp. and Development*, 2001-1329 (La. 2/26/02), 815 So.2d 7, Mr. Stern noted:

> [ ] As the Louisiana Supreme Court has itself explained, "The question involved in considering a petition for review is not whether a case is meritorious, or even whether it arguably might have been decided the other way, but whether it is more important for decision than other cases competing for the attention of the court." *Boudreaux* v. *State, Dept. of Transp. and Development,* 815 So.2d 7, n. 6 (2002), quoting ABA STANDARDS RELATING TO APPELLATE COURTS § 3.10, 16-18 (1976).

---

[2] Mr. Stern was certified as an Appellate Practice Specialist in 2016, the first year in which Louisiana recognized appellate practice as a specialty. He began his practice of law in 1985, and at the time of the hearing he served as Vice-Chair for the Louisiana Appellate Practice Advisory Commission, which advises the Louisiana Board of Legal Specialization on appellate specialization, and as Chair of the Adams and Reese LLP Appellate Practice Team. As a large part of his appellate practice, Mr. Stern advises clients and lawyers as to whether to pursue writ applications to seek a grant of certiorari or review from the Louisiana Supreme Court.

[ ] The Louisiana Supreme Court further explained, "The theory of this arrangement is that every litigant is entitled to one appellate review of a trial court's judgment on the merits, and that review is to be provided by the intermediate court. But, so the theory goes, a litigant is not entitled as a matter of right to two appeals; any further review after the first appeal should be provided only in the interest of the law and the legal system." *Boudreaux, supra* at n. 5, quoting DANIEL JOHN MEADOR, AMERICAN COURTS 15-16 (1991).

Mr. Stern explained that the Louisiana Supreme Court, in an effort to implement this approach, adopted Rule X to set forth considerations for granting review, noting that "[t]he considerations set forth under Rule X are similar to those employed by the Supreme Court of the United States in determining whether to grant certiorari. Thus, for example, the first criterion set forth under Rule X for granting review is when there is a circuit split on an issue of law, which is also a leading criterion employed by the Supreme Court of the United States."

Mr. Stern opined that for the aforementioned reasons, "the Louisiana Supreme Court, like the Supreme Court of the United States, grants review in only a small fraction of all those cases in which certiorari is sought. This is borne out by statistics maintained by the Louisiana Supreme Court, which are available in the Annual Reports it publishes each year . . . ." Mr. Stern recounted that after his review of the Supreme Court's three most recent Annual Reports "[a] total of 2,343 (non pro se) civil writ applications were filed over these three years" and "[o]f these, a total of 182 (non pro se) civil writ applications were granted over the past three years[.]" "Thus, the Court granted 7.77% of all (non pro se) civil writ applications over this three-year period." Mr. Stern declared that "[i]n any given case, the likelihood of a grant of certiorari is higher or lower than the 7.77% depending on whether the case satisfies the Rule X writ grant considerations such that it presents a legal issue the Louisiana Supreme Court feels should be addressed

for the benefit of the legal system." In Mr. Stern's opinion, the appellate court's resolution of the issue in this case was of such a narrow focus that it would not trigger Supreme Court Rule X writ grant considerations. Particularly, Mr. Stern opined:

> [T]he court of appeal also considered whether the trial court erred in citing La. Civ. Code art. 2356. The court of appeal did not decide any legal issue in this regard, but rather found that "the trial court's reference to La. C.C. art. 2356 simply was to clarify that because Sterling was formed post-termination of the community, there was no basis, absent a contractual undertaking, to attribute Troy Henry's personal guarantee of the Sterling debts to the community as a community obligation. [*Henry*, 18-0522, p. 6, 318 So. 3d at 798.] As such, the resolution of this issue was unique to the particular circumstances of the case and therefore it, too, does not implicate any Rule X writ grant considerations.

In addition, Defendants argued that it would take impermissible speculation to hold that the Supreme Court would have granted the writ application.

The motion for summary judgment came for hearing on February 18, 2021. The district court, in denying the motion, reasoned:

> In the underlying case, Mr. Henry asserts that the lower courts failed to apply the valuation of Henry Consulting performed by Chaffe. However, based upon the facts and the law, it appears that the lower courts properly removed the debts of Sterling Fresh Foods from the valuation of Henry Consulting.
>
> As it relates to the legal malpractice claim, Mr. Henry asserts that if the writ application had been filed timely, it would have been granted and the decisions of the lower courts reversed. Nevertheless, as to civil matters, the Louisiana Supreme Court has discretionary authority to exercise its supervisory jurisdiction and it grants civil writs at a low percentage rate. Defendants have established why their alleged negligence did not cause Mr. Henry a recoverable loss. First and most important, the underlying court rule[d] properly; and second, increased likelihood that the Louisiana Supreme Court would not have exercised its discretionary supervisory jurisdiction and granted or reviewed the writ application even if timely filed.
>
> So for the reasons that I have outlined, I do not believe that the summary judgment motion is ripe and I am going to deny the summary judgment motion. . . .

*Motion for Summary Judgment II*

On March 3, 2021, Defendants filed a motion for summary judgment, seeking dismissal of Mr. Henry's legal malpractice claim. In their motion, Defendants, declaring that the district court adopted the arguments from their opposition to Mr. Henry's earlier denied motion for summary judgment, re-asserted the law and arguments they raised in their opposition to Mr. Henry's motion.

Likewise, in opposition, Mr. Henry re-asserted the law and arguments he asserted in his motion for summary judgment. In addition, Mr. Henry argued that Defendants did not meet their burden of proof that the underlying case would not have been successful at trial.

On May 13, 2021, the Defendants' motion for summary came for hearing. The district court, for the same reasons it denied Mr. Henry's motion for summary judgment, granted summary judgment in favor of Defendants and dismissed Mr. Henry's claims against Defendants, with prejudice.

From this judgment, Mr. Henry's appeal followed.

## DISCUSSION

Mr. Henry contends the district court erred in the following respects: (1) in failing to shift the burden of proof to Defendants once he showed that an attorney-client relationship and obvious negligence on the part of the Defendants; (2) in requiring him to show a likelihood of success on the merits; and (3) in finding that Defendants had carried their burden of proof for summary judgment. As these assigned errors are intertwined, we will discuss them together.

*Applicable Law*

<u>Louisiana Constitution</u>

La. Const. Ann. art. V, § 5, which sets forth the Supreme Court's appellate jurisdiction, provides in pertinent part:

(B) Original Jurisdiction. The supreme court has exclusive original jurisdiction of disciplinary proceedings against a member of the bar.

* * *

(D) Appellate Jurisdiction. In addition to other appeals provided by this constitution, a case shall be appealable to the supreme court if (1) a law or ordinance has been declared unconstitutional or (2) the defendant has been convicted of a capital offense and a penalty of death actually has been imposed.

<u>Louisiana Supreme Court Rule X</u>

Rule X of the Rules of Supreme Court of Louisiana codifies the Supreme Court's broad discretion in granting or denying writs as follows:

(a) The grant or denial of an application for writs rests within the sound judicial discretion of this court. The following, while neither controlling nor fully measuring the court's discretion, indicate the character of the reasons that will be considered, one or more of which must ordinarily be present in order for an application to be granted:

1. Conflicting Decisions. The decision of a court of appeal conflicts with a decision of another court of appeal, this court, or the Supreme Court of the United States, on the same legal issue.

2. Significant Unresolved Issues of Law. A court of appeal has decided, or sanctioned a lower court's decision of, a significant issue of law which has not been, but should be, resolved by this court.

3. Overruling or Modification of Controlling Precedents. Although the decision of the court of appeal is in accord with the controlling precedents of this court, the controlling precedents should be overruled or substantially modified.

4. Erroneous Interpretation or Application of Constitution or Laws. A court of appeal has erroneously interpreted or applied the constitution or a law of this state or the United States and the decision will cause material injustice or significantly affect the public interest.

5. Gross Departure From Proper Judicial Proceedings. The court of appeal has so far departed from proper judicial proceedings or so

abused its powers, or sanctioned such a departure or abuse by a lower court, as to call for an exercise of this court's supervisory authority.

Summary Judgment

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by the litigant." *Tate v. Touro Infirmary*, 17-0714, p. 1 (La. App. 4 Cir. 2/21/18), 317 So.3d 361, 362-63, *writ denied*, 18-0558 (La. 6/15/18), 245 So.3d 1027 (citing La. C.C.P. art. 966(A)(1)). Generally, the burden of proof rests with the mover. La. C.C.P. art. 966(D)(1). An appellate court's standard of review for a grant of a summary judgment is *de novo*, and it employs the same criteria district courts consider when determining if a summary judgment is proper. *Madere v. Collins*, 17-0723, p. 6 (La. App. 4 Cir. 3/28/18), 241 So.3d 1143, 1147 (citing *Kennedy v. Sheriff of E. Baton Rouge*, 05-1418, p. 25 (La. 7/10/06), 935 So.2d 669, 686). In *Chanthasalo v. Deshotel*, 17-0521, p. 5 (La. App. 4 Cir. 12/27/17), 234 So.3d 1103, 1107 (quoting *Ducote v. Boleware*, 15-0764, p. 6 (La. App. 4 Cir. 2/17/16), 216 So.3d 934, 939, *writ denied*, 16-0636 (La. 5/20/16), 191 So.3d 1071), this Court explained:

> This [*de novo*] standard of review requires the appellate court to look at the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, to determine if they show that no genuine issue as to a material fact exists, and that the mover is entitled to judgment as a matter of law. A fact is material when its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, no need for trial on that issue exists and summary judgment is appropriate. To affirm a summary judgment, we must find reasonable minds would inevitably conclude that the mover is entitled to judgment as a matter of the applicable law on the facts before the court.

*Harris v. Boh Bros. Constr. Co., LLC*, 2020-0248, pp. 6-7 (La. App. 4 Cir. 5/26/21), 322 So. 3d 397, 404–05, *writ denied*, 2021-00910 (La. 10/19/21), 326 So. 3d 254. "[T]he moving party cannot simply file a motion for summary judgment that lacks proper support and rely on the fact that the opposing party will bear the

burden of proof at trial." *Id.*, (citing *Berard v. Home State Cty. Mut. Ins. Co.,* 11-1372, p. 4 (La. App. 3 Cir. 5/9/12), 89 So.3d 470, 472). "Once the moving party has met its burden on summary judgment, the adverse party must produce factual support sufficient to establish that he/she will be able to satisfy his/her evidentiary burden of proof at trial." *Id.*, (citing *Davis v. A Bar & Grill with a Bite, Inc.,* 19-1928, p. 2 (La. 3/16/20), 294 So.3d 1051, 1052). However, if the moving party will not bear the burden of proof at trial, the moving party must point out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. La. C.C.P. art. 966(D)(1).

Legal Malpractice

Under Louisiana law, the essential elements of a legal malpractice claim are: (1) the existence of an attorney-client relationship; (2) negligent representation by the attorney; and (3) the loss caused by that negligence. *See Saussy v. Bonin*, 2012-1755, p. 6 (La. App. 4 Cir. 9/4/13), 125 So.3d 1, 5 (quoting *Costello v. Hardy*, 03-1146, p. 9 (La. 1/21/04), 864 So.2d 129, 136). Thus, the plaintiff has the burden of proving there was an attorney-client relationship and that "the defendant failed to exercise at least that degree of care, skill, and diligence which is exercised by prudent practicing attorneys in his locality." *MB Indus., LLC v. CNA Ins. Co.*, 11-0303, p. 15 (La. 10/25/11), 74 So.3d 1173, 1184 (citations omitted). The failure of a plaintiff to carry its burden to prove all of the essential elements of its legal malpractice claim results in the dismissal of its case. *Id.*, 11-0303, p. 20, 74 So.3d at 1187.

With these precepts in mind, we conduct our *de novo* review.

*Analysis*

11

On appeal, Mr. Henry relies principally on *Jenkins v. St. Paul Fire & Marine Ins. Co.*, 422 So.2d 1109 (La. 1982), and argues that because he made a prima facie case of legal malpractice by showing an attorney-client relationship existed, and Defendants were negligent in failing to timely file his writ application with the Supreme Court, the burden of proof should have shifted to Defendants to disprove the causation of damages elements of his legal malpractice claims.

In *Jenkins*, the plaintiff filed a legal malpractice claim against two attorneys for failing to file a petition for damages before prescription had run. The central issue was "whether the client, after proving the attorneys' negligence, must also establish the validity of the underlying claim by proving that the attorneys' negligence caused him damages and by further proving the amount of the damages." *Id*. at 1110. The plaintiff contended that once the client establishes the attorney's negligence, the burden should shift to the negligent attorney to prove that the plaintiff's underlying claim would not have succeeded. Finding that the requirement for a client to prove a "case within a case" imposes too great of a standard, the *Jenkins* Court opined:

> [W]hen the plaintiff (as in this case) proves that negligence on the part of his former attorney has caused the loss of the opportunity to assert a claim and thus establishes the inference of causation of damages resulting from the lost opportunity for recovery, an appellate court (viewing the evidence on the merits of the original claim in the light most favorable to the prevailing party in the trial court) must determine whether the negligent attorney met his burden of producing sufficient proof to overcome plaintiff's prima facie case.

12

*Id.*[3] Mr. Henry, also cites *Cree Oil Co. v. Home Ins. Co.*, 94-1219 (La. App. 3 Cir. 3/8/95), 653 So.2d 620, for the proposition that the burden-shifting standard as set forth in *Jenkins* is also applicable in legal malpractice cases involving appeals.[4]

In response, Defendants argue that this case does not trigger the burden shifting doctrine as set forth in *Jenkins*. Defendants cite *MB Industries, LLC v. CNA Ins. Co.*, 2011-0303 (La. 10/25/11), 74 So.3d 1173, and argue that the burden shifting doctrine does not apply when the client proves negligence and/or some loss without also showing that the client was harmed by a bad outcome with the loss of an opportunity for recovery. Defendants contend that it is too speculative to find that the Supreme Court would have entertained Mr. Henry's writ application and that its untimely filing does not constitute causation for Mr. Henry's alleged loss.

In *MB Industries*, the plaintiff filed a legal malpractice action against its two attorneys contending that they mishandled its case for a breach of a non-competition agreement lawsuit. Both attorneys filed motions for summary

---

[3] *See also Ewing v. Westport Ins. Corp.*, 20-00339 (La. 11/19/20), 315 So.3d 175, 181, *reh'g denied*, 20-00339 (La. 2/9/21), 310 So.3d 175 (quoting *Jenkins*, 422 So.2d at 1110)(explained that "[w]here the plaintiff proves that the negligence on the part of her former attorney caused the loss of the opportunity to assert a claim, she has established the inference of causation of damages resulting from the lost opportunity for recovery").

[4] In *Cree*, the district court entered a money judgment in favor of the plaintiff spouse and against the defendant spouse and their community owned corporation, Cree Oil Company, in the underlying suit. The district court found that after the termination of the community property regime, the defendant spouse breached his fiduciary duty owed to the plaintiff spouse by failing to manage the company as a prudent administrator. Once trial concluded, appeal counsel of record enrolled and filed the defendant spouse's appeal; however, counsel did not file an appeal on behalf of Cree. The money judgment against Cree became final, as a consequence. Cree filed a malpractice suit against the attorney alleging that the attorney's failure to timely file an appeal for the money judgment constituted legal malpractice. After trial on the merits, the district court found that the attorney's failure to timely file the appeal constituted legal malpractice and that Cree would have been successful in relieving itself of liability under the money judgment. The defendants appealed. On appeal, the Third Circuit, citing *Jenkins, supra*, affirmed the district court and found that the defendants' failure to file a timely appeal resulted in a lost opportunity for Cree, as the plaintiff could have succeeded on appeal.

judgment and the district court granted. The plaintiff appealed. On appeal, the attorneys argued that the plaintiff could not establish its claim because it offered no expert testimony that the attorneys breached the standard of care in handling the case. *See MB Industries v. CNA Ins. Co.*, 10-321, p. 7 (La. App. 3 Cir. 11/3/10), 52 So.3d 168, 173. The Third Circuit reversed the district court and held that the allegations against the attorneys were not so complicated to require expert testimony and that the case could be litigated without the aid of an expert. *Id.*, 10-321, p.8, 52 So.3d at 174. The Supreme Court granted the attorneys' writ of certiorari and explained that while expert testimony was not necessary in this case, it is not enough to simply show the attorneys acted negligently without introducing evidence of causation. The Supreme Court, reiterating *Jenkins, supra*, further explained that "causation is an essential element of any tort claim" and that a malpractice plaintiff "must establish some causal connection between the alleged negligence and the eventual unfavorable outcome of the litigation." *MB Industries*, 11-0303, p. 20, 74 So.3d at 1187.

Similarly, in *Colonial Freight Sys. Inc. v. Adams & Reese LLP*, No. CIV.A. 11-1755, 2012 WL 1570103, at *2 (E.D. La. May 3, 2012), the U.S. District Court for the Eastern District of Louisiana granted a summary judgment in favor of the defendants due to the plaintiff's failure to prove causation of an alleged lost opportunity to request a jury demand. The plaintiff urged the federal district court to apply the *Jenkins* standard and find a rebuttable presumption of damages, thereby shifting the burden of proof to the defendants. After review, the federal district court ruled in favor of the defendants and found that a jury demand is not a legal issue, *Jenkins* was inapplicable and the burden remained with the plaintiff to show that the defendants' negligence caused the plaintiff's loss.

14

The *Colonial Freight* Court further espoused:

> "[t]o meet the third element of the legal malpractice test, a plaintiff must show evidence that the defendant's alleged negligence caused the plaintiff's loss. *MB Indus.*, 74 So.3d at 1187. To make this showing, the plaintiff must prove that the attorney's performance would have prevented the loss. *Holland*, 971 So.2d at 1231. If the alleged loss would have resulted irrespective of any alleged negligence, that alleged negligence is not actionable as a substantial factor or a cause in fact. *Exec. Recruitment v. Guste, Barnett & Shushan*, 533 So.2d 129,131(La. App. 4 Cir. 1988), *writ denied*, 535 So.2d 742 (La. 1989). In other words, "[s]imply establishing that an attorney was negligent, whether based upon the failure to conform to an ethical rule or some other standard, would not be sufficient to state a cause of action for legal malpractice." *Teague*, 10 So.3d at 821 (citing *Exec. Recruitment*, 533 So.2d at 131).

*Id.*

The plaintiff appealed. On appeal, the plaintiff argued that if the defendant had apprised it of its right to a jury trial, it could have convinced the plaintiff in the underlying suit to stipulate to a judgment less than $50,000. The U.S. Fifth Circuit, in affirming the federal district court's judgment, explained that the presumption of "some loss" under *Jenkins* only applies to the "the final or complete loss of an opportunity to assert a legal claim (or . . . present a defense) caused by an attorney's negligent failure to comply with the applicable procedural standards." *Colonial Freight Systems, Inc. v. Adams & Reese*, No. 12-30853, 524 Fed. Appx. 142, 143, 2013 WL 2097591, *1 (5th Cir. 2013); *see Leonard v. Reeves*, 11-1009, p. 12 (La. App. 1 Cir. 1/12/12) 82 So.3d 1250, 1259; *see also MB Industries, supra*. Thus, a plaintiff must "establish a causal connection between the attorney's negligence and the alleged loss to survive summary judgment . . . however, if a malpractice plaintiff offers only a speculative theory of loss causation, the defendant is entitled to [summary] judgment as a matter of law." *Id.*, at 144.

Turning to the case *sub judice*, there is no dispute that Mr. Henry engaged Defendants to represent him in his domestic litigation; therefore, an attorney-client relationship existed between Mr. Henry and Defendants.  In addition, there is no dispute that Defendants failed to timely file a writ of certiorari with the Supreme Court.  Thus, the narrow issue before this Court is whether Mr. Henry established the inference of causation of damages resulting from the lost opportunity for recovery, which would trigger the burden shifting doctrine.

After our *de novo* review, we conclude that Mr. Henry did not establish a prima facie case of legal malpractice, and the *Jenkins* burden shifting doctrine was not triggered.  First, we agree with this Court's decision in *Henry II* that "[t]he lack of any evidence that Henry Consulting agreed to guarantee the debts of its 50% owned subsidiary, Sterling, precludes attributing the Sterling debts to Henry Consulting." *Henry II*, 18-0522, p. 9, 318 So. 3d 794, 799.

Second, Mr. Henry did not lose his opportunity to appeal his final judgment from the district court, and his reliance on *Cree*, *supra*, is misplaced.  As previously noted, *Cree* involved the plaintiff's lost opportunity to appeal a final judgment to the appellate court.[5]  In this case, the record does not support a finding that Defendants' failure to timely file a writ of certiorari in the Supreme Court caused Mr. Henry a complete loss of an opportunity to appeal his judgment.  While Mr. Henry had an absolute right to appeal his final judgment from the district court to this Court,[6] which he did, his right for supervisory review in the Supreme Court is not absolute. *See* La. Const. Ann. art. V, § 5; La. Sup. Ct. R. X, § (a).

---

[5] *See Cree Oil Co. v. Home Ins. Co.*, 94-1219, p. 18 (La. App. 3 Cir. 3/8/95), 653 So.2d 620, 629.

[6] La. Code of Civil Proc. Art. 2083 provides:

16

Third, Mr. Henry did not establish a causal connection between Ms. Ahern's actions and his alleged loss of more than $350,000. Mr. Henry speculates that had the writ of certiorari been timely filed, the Supreme Court would have granted writs, reversed this Court's opinion and found that Henry Consultants, the community asset, was responsible for the debts of Sterling, a company solely owned by Mr. Henry. We conclude that Mr. Henry's alleged loss is speculative and insufficient to establish a causal connection, and his speculative theory of loss causation entitles Defendants to summary judgment as a matter of law. *See Colonial Freight*, No. 12-30853, 524 Fed. Appx. at 144.

Consequently, we conclude Mr. Henry did not make a prima facie case and show causation of loss to trigger the *Jenkins* burden shifting doctrine. The district court did not err in granting summary judgment in favor of Defendants and against Mr. Henry, dismissing his legal malpractice claim with prejudice. This assignment of error lacks merit.

## CONCLUSION

Based on the foregoing reasons, the judgment of the district court is affirmed.

**AFFIRMED**

---

A. A final judgment is appealable in all causes in which appeals are given by law, whether rendered after hearing, by default, or by reformation under Article 1814.
B. In reviewing a judgment reformed in accordance with a remittitur or additur, the court shall consider the reasonableness of the underlying jury verdict.
C. An interlocutory judgment is appealable only when expressly provided by law.